UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAVID TOSHNER,
PATRICIA TOSHNER,

        Plaintiffs,

    v.                                                Case No. 18-cv-2005-bhl

JORDAN GOODMAN, et al.,

        Defendants.

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Plaintiffs David and Patricia Toshner lost substantial sums of money investing in what turned out to be a "Ponzi" scheme orchestrated by Robert Shapiro and the Woodbridge Group of Companies LLC d/b/a Woodbridge Wealth (Woodbridge). With Shapiro now in prison and Woodbridge insolvent, the Toshners seek, through this lawsuit, to recover their investment losses from four defendants—Jordan Goodman, Knowles Systems Inc. (Knowles), Lynette Robbins, and Robyn Ellis—all of whom were involved in some fashion in the Toshners' investment transactions with Woodbridge. When the Court denied Defendants' motions to dismiss two and half years ago, it noted that the Toshners' second amended complaint paints with a broad brush and warned them that, to survive summary judgment, they would need to marshal specific evidence against each defendant. The Toshners have not heeded the Court's advice. Despite ample opportunity for discovery, they offer little evidence of wrongdoing by *these defendants*. Instead, they continue to emphasize the misconduct of Shapiro and Woodbridge, neither of whom is a party to this case. While the Court acknowledges that the Toshners were victims of Shapiro's scheme, their victimization does not excuse them from proving their claims here. Because the Toshners have failed to carry their evidentiary burden, Defendants are entitled to summary judgment.[1]

---

[1] Robyn Ellis has not moved for summary judgment. Her lawyer withdrew on May 24, 2022, leaving her *pro se*. (ECF No. 100.) As the Toshners' counsel confirmed at oral argument, the record relating to Plaintiffs' claims against Ellis appears no better than the record against her co-defendants. Accordingly, the Court will allow the Toshners fourteen days to explain why summary judgment should not also be granted in Ellis's favor. *See* Fed. R. Civ. P. 56(f).

## BACKGROUND[2]

Plaintiffs David and Patricia Toshner are a married couple who, at all relevant times, resided in Fond du Lac, Wisconsin. (ECF No. 54 ¶15.) Between 2015 and 2017, the Toshners signed documents and received promissory notes evidencing their agreements to loan funds to the now-defunct Woodbridge. (*Id.* ¶¶1, 8, 10, 23, 81.)

Defendant Jordan Goodman is an author and financial correspondent who, during the relevant time period, appeared on radio talk shows to discuss investment options and strategies, including mortgage-backed loans. (ECF No. 104 ¶13.) Defendant Lynette Robbins is the founder and CEO of Defendant Knowles Systems, a Florida-based firm that, among other things, sold investments for Woodbridge. (ECF No. 54 ¶¶8, 17, 19.) Defendant Robin Ellis was an employee of Knowles. (*Id.* ¶18.)

Woodbridge used external sales agents, like Knowles, to find investors willing to loan Woodbridge money and, in return, receive Woodbridge promissory notes. (ECF No. 104 ¶12.) One of the avenues that Woodbridge and Knowles used to advertise the notes was Goodman, an author and former financial correspondent who often appeared on radio talk shows to discuss investment options and strategies. (*Id.* ¶¶13–14.) Goodman learned about Woodbridge through a pre-existing relationship with Knowles. (*Id.* ¶14.) When listeners asked Goodman about investing in first position commercial mortgage loans, including Woodbridge's promissory notes, he would generally discuss the mechanics of how the promissory notes worked and refer them to Knowles for further information. (*Id.* ¶¶15–16.)

In 2015, Plaintiff David Toshner heard Goodman recommend Woodbridge notes during a WGN radio broadcast. (*Id.* ¶17.) After the broadcast, Toshner emailed Goodman to ask for his advice in investing a "sizeable" settlement Toshner had received following an industrial accident. (ECF No. 114 ¶2.) Toshner complained that the proceeds from his settlement were "collecting nothing" in a checking account and expressed dissatisfaction with his existing investment adviser at Wells Fargo. (*Id.*) He noted his unhappiness with the traditional investments in his Wells Fargo account, including IRAs, cash, stocks, and bonds, and suggested he and his wife wanted to leave

---

[2] The facts are derived from the parties' pleadings and proposed findings of fact and responses. (ECF Nos. 54, 80, 83, 88, 104, 107, 112, 121.) The parties' summary judgment filings leave much to be desired. Plaintiffs failed to respond to any of Defendants' proposed findings of fact. (ECF Nos. 104 & 107.) Defendant Goodman did not respond to Plaintiffs' proposed findings of fact. (ECF No. 112). Under Civil Local Rule 56(b)(4), any proposed findings of fact not responded to are deemed admitted against the non-responding party for purposes of summary judgment.

Wells Fargo but had not found the "right fit." (*Id.*) After first trading messages, Goodman and Toshner had one or two telephone conversations. (*Id.* ¶¶3–4.) Toshner reports the call or calls lasted "at least" thirty minutes. (*Id.* ¶4.) During these communications, Goodman recommended that the Toshners invest their money in Woodbridge promissory notes negotiated through Knowles. (*Id.*)

Toshner asserts that Goodman made statements about Woodbridge and the benefits of investing their money in Woodbridge loans. Goodman described the notes as "super safe" and paying a higher interest rate than the Toshners' bond and cash investments. (*Id.*) He said the notes would continue to pay interest at 5–8% every month and the Toshners "would get back [their] principal when the notes came due." (*Id.*) He also described Woodbridge and its managers as reliable and having a long-term track record and reiterated that the notes were "safe and secure" because the Toshners, as lenders, "would have a first position lien on the properties we got a mortgage note on." (*Id.*) Goodman even "urged" Toshner to "sell [his] home" and invest the proceeds in additional notes. (*Id.*) Goodman then referred the Toshners to Knowles and had no further contact with them prior to their decision to invest with Woodbridge. (*Id.*)

Toshner then connected with Robbins at Knowles. (*Id.* ¶5.) According to Toshner, Robbins described Woodbridge and the notes in the same general terms as Goodman. (*See id.*) Robbins reiterated that the Woodbridge promissory notes were "super safe" and the Toshners "would get a check every month for interest payments." (*Id.*) She also told them that Robyn Ellis would be the Toshners' regular contact at Knowles. (*Id.*) A "short time" after speaking with Robbins, the Toshners began receiving paperwork from Ellis for investing their money in Woodbridge notes (presumably from Knowles). (*Id.* ¶¶5–6.)

In the months that followed, David Toshner spoke to Ellis "many times." (*Id.* ¶6.) Toshner does not offer specifics on these communications but reports that she generally "assured [him] of the same things about the notes that Goodman and Robbins had" and promised "she would always be there" for the Toshners. (*Id.*) Ellis's role later consisted of sending the Toshners the paperwork through which they participated in the Woodbridge note investments. She also provided paperwork for "rollovers" of loans from existing notes into new ones for new investments. (*Id.*)

The Toshners also report that Ellis and Robins sent them emails, but none of those specific communications are in the record. Instead, the Toshners report generally that the emails assured them that due diligence had been performed "to make sure the properties supporting the loans were

of the highest quality." (ECF No. 112 ¶32.) Between October 9, 2015 and November 27, 2017, the Toshners invested $510,000 in "notes, rollovers, and mezzanine notes" from Woodbridge through Knowles. (ECF No. 114 ¶6; ECF No. 104 ¶19.)

The Toshners' final communications with Woodbridge took place in late 2017. On November 27, 2017, they received paperwork directly from Woodbridge proposing the cancellation of an existing April 20, 2016 note and a proposed rollover of the funds into a new note for the "Owlwood Estates Mezzanine" program. (ECF No. 114 ¶8.) In response, the Toshners signed documentation, including a proposed loan agreement and promissory note, for this transaction, under which they would provide a $50,000 loan with a 6% interest rate. (*Id.*; ECF No. 114-1.) They sent the documents to Woodbridge on December 4, 2017, but did not receive any acceptance, acknowledgement, or a fully executed promissory note back from Woodbridge in return. (*See* ECF No. 114 ¶8.)

On "the same day," the Toshners received similar documentation, including a cancellation form for a different $60,000 note they had issued to Woodbridge a year earlier. (*Id.* ¶9.) The Toshners signed this documentation too, agreeing to roll over that $60,000 into a new note for the "Stella Four-Los Angeles"[3] program. (*Id.*) The Toshners sent the signed paperwork related to the Stella Four – Los Angeles loan to Woodbridge on December 4, 2017 as well, but again never received countersigned documentation or anything else in return. (*See id.*)

Shortly thereafter the Toshners learned that Shapiro and various Woodbridge insiders were involved in a "Ponzi" scheme. (*See* ECF No. 121 ¶21.) Woodbridge missed its first payment to investors on December 1, 2017 and filed for Chapter 11 bankruptcy on December 4, 2017. (ECF No. 104 ¶27.) After Woodbridge's bankruptcy announcement, Toshner recalls that he spoke with Goodman, who "assured" him that the Toshners would get their money back. (ECF No. 114 ¶4.) The Toshners filed this lawsuit against Goodman, Robbins, Ted Leutz, Ellis, and Knowles on November 20, 2018. (ECF No. 107 ¶¶1–2.) Leutz was dismissed as a defendant in a May 26, 2020 order and the Toshners' second amended complaint followed. (ECF Nos. 53 & 54.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the record shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

---

[3] The documents attached to Toshner's declaration suggest the property is actually "Stradella Four – Los Angeles." (*See* ECF Nos 114-2 & 120-2.)

The Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Id.* at 248; *Contreras v. City of Chicago*, 119 F.3d 1286, 1291–92 (7th Cir. 1997). A dispute over a material fact is "genuine" only if a reasonable trier of fact could find in favor of the non-moving party on the evidence presented. *Liberty Lobby*, 477 U.S. at 248.

The moving party bears the initial burden of proving the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Upon such a showing, the burden shifts to the opposing party to "make a showing sufficient to establish the existence of an element essential to that party's case." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (quoting *Celotex*, 477 U.S. at 322). This burden is not onerous, but the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts" and provide specific facts showing a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citing Fed. R. Civ. P. 56(e)). Those specific facts must be supported by admissible evidence. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("[A] court may consider only admissible evidence in assessing a motion for summary judgment.")

If the parties assert different views of the facts, the Court must view the record in the light most favorable to the nonmoving party. *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). "Although we construe all facts and make all reasonable inferences in the nonmoving party's favor, the moving party may succeed by showing an absence of evidence to support the non-moving party's claims." *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021) (quoting *Tyburski v. City of Chicago*, 964 F.3d 590, 597 (7th Cir. 2020)).

**ANALYSIS**

The Toshners have four claims that have survived to summary judgment: (1) intentional misrepresentation; (2) negligent misrepresentation; (3) violations of a Wisconsin statute prohibiting the unlawful sale of unregistered securities; and (4) violations of Wisconsin anti-fraud and unlicensed broker statutes. (ECF Nos. 54 & 78.) All four claims are asserted against all remaining Defendants. Defendants now seek summary judgment on all four claims, insisting that

the Toshners have failed to provide proof of at least one required element of each claim. (ECF No. 106 at 4–8; ECF No. 103 at 13–28.)

Before addressing the parties' arguments, the Court notes that the Toshners have made little effort to develop admissible evidence to support their claims. At oral argument, counsel confirmed that the Toshners took only one deposition (of Goodman), and, remarkably, no part of the transcript has found its way into the summary judgment record. Plaintiffs' summary judgment opposition relies instead on a series of general assertions in a declaration from David Toshner, (ECF No. 114), along with hearsay statements pulled from Securities and Exchange Commission (SEC) documents and a stipulated factual proffer filed in the government's criminal case against Shapiro. (ECF Nos. 113-1; 113-2; 113-7.) There are problems with each of these offerings.

The Toshner Declaration, while admissible, offers little help in proving misconduct by Defendants. It is light on specifics, high on generalities, and far from clear and convincing evidence of fraud. Plaintiffs' reliance on allegations pulled from two SEC civil complaints (one filed against Goodman and a second filed against Robbins and Knowles) is also unhelpful. The SEC's allegations against Defendants are not evidence that the allegations are true. While the record confirms that Goodman, Robbins and Knowles each entered into consent decrees after being subjected to the SEC complaints, the consent decrees do not transform the allegations in those complaints into admissible evidence. Indeed, Defendants resolved the disputes against them "[w]ithout admitting or denying" the SEC's allegations. (ECF No. 113-3 at 1; ECF No. 113-4 at 1.) And the fact that Defendants settled the SEC's claims is also inadmissible to prove liability under Federal Rule of Evidence 408(a). *See Meyer v. Ward*, No. 13-C-3303, 2017 WL 1862626, at *2 (N.D. Ill. May 9, 2017) (holding that SEC consent decrees are inadmissible to the extent they are used to prove the truth of the matters asserted therein under Fed. R. Evid. 408).[4] Finally, the Toshners offer no explanation for how the Shapiro factual proffer, a document from a non-party's criminal case, is admissible *against these defendants* in this civil case. The Toshners suggest that the factual proffer's contents prove that Shapiro and his co-conspirators intentionally defrauded

---

[4] The Toshners cannot avoid these basic evidentiary issues based on Defendants' agreement to comply with an SEC regulation, 17 C.F.R. § 202.5(e), which describes SEC "policy" of not entering into consent decrees with defendants who deny the allegations made against them. The Toshners correctly observe that Goodman and Robbins agreed in their consent decrees not to take any action or make any public statement denying the allegations in the SEC's complaints against them. (ECF No. 113-3 at 5; ECF No. 113-4 at 7.) But that does not make the allegations admissible as proof of liability in a subsequent civil lawsuit. Indeed, the consent decrees also provide that Goodman and Robbins reserved their rights to take contrary legal or factual positions "in litigation or other legal proceedings in which the [SEC] is not a party." (ECF No. 113-3 at 5; ECF No. 113-4 at 7.)

investors by making misleading statements about the notes. (ECF No. 111 at 10–11.) Even if true with respect to Shapiro, the proffer is inadmissible hearsay against Defendants here and cannot be considered evidence at summary judgment. *See Gunville*, 583 F.3d at 985 (collecting cases). Moreover, even if it were admissible, the proffer says nothing about the conduct of these defendants; it does not identify them as co-conspirators or, in fact, even mention them by name. (*See* ECF No. 113-7.)

Accordingly, the Court is left with a summary judgment record consisting of the evidence submitted by Defendants and the general assertions in the Toshner declaration, which, again, is of limited evidentiary value. The Court warned the Toshners when it allowed this case to move past the motion-to-dismiss stage that they would need to provide specific evidence to support each element of each claim against each defendant. Their decision not to develop further admissible evidence is a problem of their own making.

**I.     Defendants Are Entitled to Summary Judgment on the Toshners' Intentional Misrepresentation Claims.**

Under Wisconsin law, a claim for intentional misrepresentation, or common-law fraud, has four elements: (1) a false representation of fact that (2) the plaintiff believed and relied upon to his detriment and (3) was made "knowingly or recklessly" and (4) with the intention of deceiving and inducing the plaintiff. *See Pagoudis v. Keidl*, 988 N.W.2d 606, 612 (Wis. 2023) (citing *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 239 (Wis. 2004)). These elements must be proven by clear and convincing evidence. *Lundin v. Shimanski*, 368 N.W.2d 676, 681 (Wis. 1985) (citing *Williams v. Rank & Son Buick, Inc.*, 170 N.W.2d 807, 809 (Wis. 1969)). Defendants insist the Toshners lack proof to support their allegations of fraud and have thus failed to carry their burden on several of the required elements. (ECF No. 103 at 26–28; ECF No. 106 at 5–6.) The record confirms Defendants' position. Because the Toshners have failed to present admissible evidence on the elements of their intentional fraud claim, Defendants are entitled to summary judgment.

**A.     Several of the Alleged "Misrepresentations" Are Not Representations of Fact.**

Defendants maintain that the Toshners have failed to proffer evidence of any intentional misrepresentations made by these Defendants. (ECF No. 103 at 26–28; ECF No. 106 at 5–6.) They also invoke the higher standard of proof for intentional misrepresentation claims and point to the lack of "clear and convincing evidence" of any misrepresentations. (ECF No. 119 at 2, 14.) The Court agrees, but only in part.

Under Wisconsin law, an intentional misrepresentation claim can be based on either an untrue statement of material fact or "a failure to disclose a material fact." *Kaloti Enters. v. Kellogg Sales Co.*, 699 N.W.2d 205, 211 (Wis. 2005) (quoting *Ramsden v. Farm Credit Servs. of N. Cent. Wis. ACA*, 590 N.W.2d 1, 5 (Wis. Ct. App. 1998)). An incorrect opinion is not an intentional misrepresentation, however, and cannot support a claim of fraud. *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan ex rel. Lyon v. Buth*, 475 F. Supp. 3d 910, 938 (E.D. Wis. 2020) ("[A] statement is not a representation of fact if it expresses mere opinions on quality, value, authenticity or other matters of judgment.") (quoting *Slane v. Emoto*, 582 F. Supp. 2d 1067, 1085 (W.D. Wis. 2008))). Courts have also long recognized that sales "puffery" cannot be an actionable misrepresentation of fact. *Tietsworth*, 677 N.W.2d at 245 ("Puffery has been defined as 'the exaggerations reasonably to be expected of a seller as to the degree of quality of his product, the truth or falsity of which cannot be precisely determined.'") (quoting *State v. Am. TV & Appliance of Madison, Inc.*, 430 N.W.2d 709, 712 (Wis. 1988)). Any "vague or indefinite" statements of quality, like "masterpiece" or "best" or "premium quality," are nonactionable puffery. *See Loula v. Snap-On Tools Corp.*, 498 N.W.2d 866, 868 (Wis. Ct. App. 1993); *Loeb v. Champion Petfoods USA Inc.*, No. 18-cv-494-jps, 2018 WL 2745254, at *6 (E.D. Wis. June 7, 2018) (holding "World's Best" to be puffery, but "fit for human consumption," "biologically appropriate," "minimally processed," and "fresh" are disputable facts and therefore not puffery). Likewise, promises or predictions of future events are not representations of fact and cannot be the basis for an intentional fraud claim. *See D'Huyvetter v. A.O. Smith Harvestore Prods.*, 475 N.W.2d 587, 592 (Wis. Ct. App. 1991) (citing *Hartwig v. Bitter*, 139 N.W.2d 644, 646 (Wis. 1966); *Lundin*, 368 N.W.2d at 684).

Many of the Toshners' proposed misrepresentations are nonactionable under these basic principles. In their Second Amended complaint, the Toshners generally allege that Goodman, Robbins, Knowles, and Ellis repeatedly assured them that the Woodbridge notes were "safe and conservative" and "low-risk." (ECF No. 54 ¶89.) They also point to Defendants' alleged assertions that they "were experienced, skilled investment advisors" and promises that the Toshners would "receive their principal investment when the Notes matured and came due." (*Id*.) At summary judgment, the Toshners emphasize that Goodman and Robbins "repeatedly assured" David Toshner that the Woodbridge notes were "super safe" and that Woodbridge was a well-established, safe company. (ECF No. 111 at 9, 17.) The Toshners do not provide specific dates or times for

when each Defendant allegedly made these misrepresentations. Nor do they tie them to specific Woodbridge transactions.

Lack of specifics aside, none of these statements can form the basis for an intentional misrepresentation claim under Wisconsin law. Most are qualitative statements, opinions, or sales puffery. They simply are not actionable misstatements of fact. *See Tietsworth*, 677 N.W.2d at 246 ("'Premium quality' equates to 'the best,' and is squarely within the puffery definition . . . ."); *Loula*, 498 N.W.2d at 868 ("The representation[s] . . . [are] so vague and indefinite that [they] amount[] to nothing more than mere puffery, upon which [the plaintiff] had no right to rely."); *Slane*, 582 F. Supp. 2d at 1085 (citing *Consol. Papers, Inc. v. Dorr-Oliver, Inc.*, 451 N.W.2d 456, 459 (Wis. Ct. App. 1989)). And the Toshners' assertion that Defendants told them they would get their principal back when the Notes later matured is a non-actionable prediction of future events. It cannot form the basis for an intentional misrepresentation claim. *See D'Huyvetter*, 475 N.W.2d at 592.

But not all of the Toshners' alleged misrepresentations fall within these categories. The Toshners contend Defendants represented that they had "conducted due diligence" on the notes "when they had not." (ECF No. 54 ¶89.) This is a factual statement that could be proven true or false. The Toshners also claim that Defendants represented that Woodbridge "had been a business for more than 20 years" with a "strong track record of returning 5-8% income to investors." (*Id.*) These statements are also matters of fact, that may or may not have been true. The Toshners are also on better footing alleging that Defendants failed to disclose material facts, including that the notes were unregistered securities, that Defendants "were not licensed brokers or investment advisors," and that Woodbridge "failed to purchase properties as collateral for the Notes." (*Id.*) These allegations nevertheless fail for other reasons.[5]

---

[5] At summary judgment, the Toshners also seek to reframe or identify additional misrepresentations. They allege Defendants represented that the notes were secured by first position liens and that Woodbridge "was nothing more than a Ponzi scheme." (*See* ECF No. 111 at 18–19.) They also rely on additional alleged nondisclosures, including that Defendants failed to disclose that they were "paid transactional commissions for recommending and selling" the notes and that "the notes were [unlawfully] unregistered securities." (*Id.* at 17.) The Toshners also claim that Goodman specifically failed to disclose that Knowles "was the only firm that retained [Goodman] to tout" the notes, and the "'spread' between wholesale interest and retail rate." (*Id.* at 18.) Leaving to one side that these are new fraud claims, not raised in their pleadings, the Toshners' updated efforts nevertheless fail for reasons discussed below.

### B. The Toshners Have Failed to Muster Admissible Evidence of Defendants' Knowledge or Fraudulent Intent and of the Toshners' Reasonable Reliance.

Common law fraud requires proof that the defendant either knew "the representation [was] untrue or [made] the representation . . . recklessly without caring whether it was true or false." *Lundin*, 368 N.W.2d at 681 (quoting *Whipp v. Iverson*, 168 N.W.2d 201, 203 (Wis. 1969)). A fraud plaintiff must also show intentional deceit, which requires specific proof that the defendant misrepresented the fact with the intention of influencing the plaintiff. *Brentwood Condo, LLC v. Walstead*, No. 2010AP572, 2010 WL 4972682, at *6 (Wis. Ct. App. Nov. 24, 2010). The plaintiff must also show that his or her reliance on the alleged misrepresentation or nondisclosure was justifiable. *Malzewski v. Rapkin*, 723 N.W.2d 156, 162–63 (Wis. Ct. App. 2006) (citing *Lambert v. Hein*, 582 N.W.2d 84, 92 (Wis. Ct. App. 1998)); *see also Blenker Bldg. Sys., Inc. v. Array Fin. Servs.*, 340 F. Supp. 3d 792, 798 (W.D. Wis. 2018) ("A party 'may not close his eyes to what is obviously discoverable by him.'") (quoting *Williams v. Rank & Son Buick, Inc.*, 170 N.W.2d 807, 810 (Wis. 1969)).

Defendants argue that the Toshners failed to provide clear and convincing evidence of these remaining elements of their intentional misrepresentation claims. They insist there is no evidence that any of them knowingly or recklessly omitted or failed to disclose any material facts or that they did so with intent to deceive the Toshners. (ECF No. 119 at 14.) In response, the Toshners point to David Toshner's declaration, the SEC documents, and the Shapiro's stipulated factual proffer. (ECF No. 111 at 16–20.) For reasons previously articulated, the Toshners' evidence is problematic.

Even viewing the record in their favor, the Toshners have offered no admissible evidence that any of the defendants knew any of the specifically alleged misrepresentations and nondisclosures was inaccurate or that they made the statements or omissions with reckless disregard for their truth. The Toshners have also failed to come forward with evidence that any of the defendants made any alleged misrepresentation or nondisclosure with the specific intent to deceive the Toshners. These are required elements of the Toshners' common law fraud claim. The sole piece of admissible evidence offered, David Toshner's declaration, does not address either point. This basic evidentiary failing dooms the Toshners' claim.

At oral argument, the Toshners' counsel insisted that the sheer volume of notes sold suggested each of the defendants must have known the statements were false. Counsel also argued the nature of the admitted "Ponzi" scheme was sufficient to allow a jury to conclude Defendants

acted with reckless disregard and an intent to deceive. But conjecture and speculation are not evidence. Without some admissible proof that Defendants knew or should have known that their statements were untrue or that they acted with an intent to deceive, and that the Toshners reasonably relied upon the misstatements or omissions, the Toshners' common law fraud claim cannot survive. Rhetoric at oral argument cannot overcome a lack of evidence in the record. *See Liu v. T & H Mach., Inc.*, 191 F.3d 790, 796 (7th Cir. 1999) ("A party must present more than mere speculation or conjecture to defeat a summary judgment motion."); *King v. Ford Motor Co.*, 872 F.3d 833, 840 (7th Cir. 2017) ("[C]onclusory statements . . . are not enough to stave off summary judgment.") (internal quotations omitted).

Defendants also point to the lack of evidence of the Toshners' reliance on any of the alleged statements and omissions. (ECF No. 103 at 27; ECF No. 119 at 14.) This is another basic evidentiary failing. The Toshners allege reliance in their Second Amended Complaint, (ECF No. 54 ¶¶44, 67, 91, 98, 129), but have not backed up that allegation with admissible evidence at summary judgment. The Toshners' sole piece of evidence, David Toshner's four-page declaration, fails to offer even a basic statement that he or his wife relied upon Robbins's, Ellis's, or Goodman's statements or nondisclosures in deciding to purchase any Woodbridge note or to participate in any rollover of funds. (*See* ECF No. 114.)[6] Nor have they pointed to any other evidence in the record showing reliance. The allegations in their complaint are insufficient at summary judgment. Intentional misrepresentation claims require proof that "the plaintiff . . . believed and relied on the misrepresentation to his detriment or damage." *Tietsworth*, 677 N.W.2d at 239. Counsel's contention at oral argument that evidence of reliance is implicit in David Toshner's declaration ignores what the declaration actually says (and does not say) and the summary judgment standard.

The Court "has one task and one task only" at summary judgment: "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citing *Liberty Lobby*, 477 U.S. at 249–50). The Toshners did not provide evidence that the defendants knowingly and intentionally defrauded them or that the Toshners themselves relied upon the moving defendants' statements or omissions. This absence of evidence requires that the Court grant the motions for summary

---

[6] Also notably absent from David Toshner's declaration are the omissions he insists are fraudulent (and negligent). (*See* ECF No. 114.)

judgment with respect to this claim. *See id.* (citing *Matsushita*, 475 U.S. at 585–87; *Celotex*, 477 U.S. at 322–24; *Liberty Lobby*, 477 U.S. at 249–52).

II. **The Toshners Have Likewise Failed to Provide Sufficient Proof to Create an Issue of Fact on their Negligent Misrepresentation Claim.**

Under Wisconsin law, a claim for negligent misrepresentation has four elements: (1) the defendant made a representation of fact (2) that was untrue (3) that the defendant was negligent in making the representation and (4) the plaintiff believed the representation was true and relied on it. *Malzewski*, 723 N.W.2d at 163. Unlike intentional misrepresentation claims, a claim for negligent misrepresentation cannot be based on an omission or nondisclosure. *Eberts v. Goderstad*, 569 F.3d 757, 765 (7th Cir. 2009) (noting that the Wisconsin Supreme Court "specifically declined to adopt a negligent misrepresentation-by-nondisclosure claim") (citing *Ollerman v. O'Rourke Co.*, 288 N.W.2d 95, 112 (Wis. 1980)). A negligent misrepresentation claim also requires that the buyer's reliance be justifiable, which means the buyer should not have themselves been negligent in their reliance on a representation. *Lambert*, 582 N.W.2d at 92.

Defendants argue, as they did for the intentional misrepresentation claim, that the Toshners' negligent misrepresentation claim fails for lack of evidence of any actionable misrepresentation and of any reasonable reliance. (ECF No. 106 at 5; *see also* ECF No. 117 at 9–12; ECF No. 119 at 9–11.) In opposition, the Toshners again rely on the SEC documents, the Shapiro proffer, and Toshner's declaration. (ECF No. 111 at 16–20.) For many of the same reasons the Toshners' intentional fraud claim fails, so does their negligent misrepresentation claim.

As mentioned above, under Wisconsin law, omissions and nondisclosures are not actionable on a negligent misrepresentation theory. *See Eberts*, 569 F.3d at 765. And, as before, opinions and predictions of future events cannot amount to misrepresentations of fact. *See Loula*, 498 N.W.2d at 868; *Friends of Kenwood v. Green*, 619 N.W.2d 271, 275 (Wis. Ct. App. 2000). But, again, not all the Toshners' alleged misrepresentations fall in these categories. In their Second Amended Complaint, the Toshners allege that Defendants negligently misrepresented that they "conducted due diligence" on the notes "when they had not," Woodbridge "had been a business for more than 20 years" with a "strong track record of returning 5-8% income," and Defendants "were experienced, skilled investment advisors." (ECF No. 54 ¶89.) At summary judgment, the Toshners emphasize only two points: that the notes were secured by first position liens and a (nonactionable) failure to disclose that Woodbridge "was nothing more than a Ponzi scheme." (*See* ECF No. 111 at 17–19.)

This claim fails because the Toshners have again failed to offer proof that they actually believed any of the potentially actionable statements were true at the time or that they specifically relied upon them in entering into any specific transaction with Woodbridge. (*See* ECF No. 114); *cf. Selzer v. Brunsell Brothers, Ltd.*, 652 N.W.2d 806, 811 (Wis. Ct. App. 2002) (holding that an affidavit stating that the individual "relied on" defendants' statements, while "sparse," was enough to demonstrate reliance). As detailed above, the only admissible evidence the Toshners have presented to support their claims at summary judgment is David Toshner's declaration, and it is silent on these elements. (*See* ECF No. 114.) Having failed to provide any evidence to support these required elements of their negligent misrepresentation claim, the Toshners' negligent misrepresentation claim fails at summary judgment.

### III. The Toshners Have Provided No Evidence Implicating Defendants Under Wisconsin Statute Section 551.301.

In Wisconsin, it is unlawful for a person to offer or sell a security unless it is a federally covered security, registered, or exempt from registration. Wis. Stat. § 551.301. If the sale of a security violates Section 551.301, the purchaser may sue "to recover the consideration paid for the security" after subtracting any income received and the legal rate of interest. Wis. Stat. § 551.509(2)(a). The Court agrees with Defendants that the Toshners' attempt to impose liability under Section 551.301 fails for at least two reasons.

First, Goodman, Robbins, and Knowles all maintain that this claim is time-barred. (ECF No. 103 at 11–12; ECF No. 106 at 7–8.) A person making a claim under Section 551.301 must do so within one year of the violation. Wis. Stat. § 551.509(10)(a). The Toshners filed suit on November 20, 2018. (*See* ECF No. 1-1.) Accordingly, under Section 551.509(10)(a), the Toshners' complaint is timely only as to any securities purchases the Toshners made in the one-year period between November 20, 2017 and November 20, 2018.

The Toshners identify only two allegedly improper sales of securities within this timeframe, both of which involve "rollover" transactions, the paperwork for which they received from Woodbridge within the one-year window. (*See* ECF Nos. 114-1 & 114-2.) The rollover paperwork proposed that the Toshners would cancel previously acquired promissory notes (purchased outside the one-year window) in exchange for new promissory notes from Woodbridge that would be secured new real estate developments: (1) the Owlwood Estates property for $50,000 principal and 8% interest; and (2) the Stella Four property for $60,000 principal and 6% interest. (*See id.*) According to the Toshners, they received paperwork for these rollovers on November

27, 2017. (ECF No. 114 ¶¶8–9.) They also claim to have signed the paperwork for both proposed transactions and returned it to Woodbridge via FedEx on December 4, 2017. (*Id.*)

The Toshners' contention that this paperwork constitutes an improper sale of unregistered securities fails because there is no evidence that these transactions were consummated. Indeed, the evidence in the record shows they were not. While the transactions were proposed within the one-year limitation period, neither transaction actually resulted in a sale of a security, unregistered or otherwise. As the documents themselves confirm, the Toshners signed the paperwork but Woodbridge did not. (*See* ECF No. 114-1 at 7; ECF No. 114-2 at 7.) The documents have a signature line for "Robert Reed," Woodbridge's "authorized representative," but there is no evidence Reed or any other Woodbridge representative ever executed the documents for either transaction. (*Id.*) The Toshners never received anything back from Woodbridge, a fact that makes sense given that Woodbridge filed for bankruptcy the same day the Toshners returned the forms. (ECF No. 104 ¶27.) To the extent Woodbridge's making of promissory notes to the Toshners constituted a sale of securities, no such sale was consummated as to either of these proposed transactions. A promissory note is only effective when signed by the borrower. *See Crown Life Ins. Co. v. LaBonte*, 330 N.W.2d 201, 207 (Wis. 1983). The Toshners have provided no evidence that Woodbridge signed any promissory notes or other loan documents related to either of these transactions. Absent proof of an actual sale during the limitations period, the Toshners' Section 551.301 claim fails.

Second, the Toshners' Section 551.301 claims fails for an entirely independent reason—there is no evidence that the defendants named in this lawsuit, Goodman, Robbins, Ellis or anyone else from Knowles, had any involvement in either of the two proposed transactions. Defendants' names appear nowhere in relation to these documents. The Toshners received the identified paperwork directly from Woodbridge. (ECF No. 120-1 at 1–2; ECF No. 120-2 at 1–2.) Counsel for the Toshners admitted at oral argument that none of the defendants had anything to do with these two transactions. The Toshners' claims under Wisconsin's unregistered securities statute must therefore be dismissed.

### IV. The Anti-Fraud and Unlicensed Broker Statutory Claims Similarly Fail.

The Toshners' final claims assert violations of various provisions in the Wisconsin securities statutes. The Toshners invoke Section 551.501(2) and (3) of Wisconsin's general fraud statute. They claim that Defendants' fraudulent misrepresentations, as detailed above, make

Defendants liable under the statute as well as for common-law fraud. (ECF No. 54 ¶112.) They also claim Defendants violated both Wis. Stat Sections 551.502(1) and 551.509(6), which prohibit fraudulent conduct in providing investment advice. (*Id.* ¶¶113–114.) The Toshners insist that because Defendants "directly or indirectly advised [the Toshners] for compensation . . . as to the value and advisability of purchasing the Woodbridge Notes," Defendants are liable under those statutes, too. (*Id.* ¶115.)

Goodman argues that these statutory claims are also time-barred. (ECF No. 103 at 11–12.) With the other defendants, he also contends the claims fail because Wisconsin does not allow a private right of action for Section 551.502 claims and the Toshners' attempt to resurrect this claim through Section 551.509(6) is a nonstarter. (*See* ECF No. 117 at 8 n.2; ECF No. 119 at 14–15.) The record confirms that these claims also fail as a matter of law.

### A. The Toshners' Statutory Claims Are Timely Under the Discovery Rule.

According to Goodman, the Toshners' Sections 551.501 and 551.502 claims are untimely under the two-year statute of limitations applicable to these claims. (ECF No. 103 at 11–12.) He notes that his communications with the Toshners took place in the fall of 2015, more than two years before they filed in November 2018. (*Id.* at 11.) He also claims the Toshners should have known that the notes they purchased were unregistered securities based on information that was publicly available more than two years before they filed suit. (*Id.* at 12.)

Goodman's timeliness argument fails because the Toshners claim not to have been aware of the allegedly fraudulent conduct until December 2017, at the earliest, when Woodbridge filed for bankruptcy. (*See* ECF No. 111 at 23.) According to the Toshners, they were unaware Woodbridge was a Ponzi scheme until Woodbridge's bankruptcy filing. (ECF No. 111 at 23–24.) Looking at the facts in a light most favorable to the Toshners, a jury could find that the Toshners did not discover any facts that would lead a reasonably diligent plaintiff to investigate further until December 2017. Therefore, their claims under Sections 551.501 and 551.502 are not time-barred as a matter of law. These claims nevertheless fail for other reasons.

### B. Like the Toshners' Common-Law Fraud Claim, Their Statutory Fraud Claims Under Wis. Stat. Section 551.501(2) and (3) Fail.[7]

Section 551.501 makes it unlawful for a person, in connection with the offer, sale, or purchase of a security to "make an untrue statement of a material fact," or to omit a material fact that would have made a statement not misleading. Wis. Stat. § 551.501(2). A purchaser invoking this statute must also show that he or she "did not know the untruth or omission." Wis. Stat. § 551.509(2). The statute also makes it generally unlawful to "engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person." Wis. Stat. § 551.501(3). Section 551.501 does not require proof of intent to defraud. *See Dorsch v. Butler (In re Butler)*, No. 17-22141-svk, 2017 WL 5151678, at *7 (Bankr. E.D. Wis. Nov. 6, 2017) (citing *State v. Temby*, 322 N.W.2d 522, 526 (Wis. Ct. App. 1982)). But the defendant "must have known" the falsity of his statements or failed to take reasonable care to discover facts showing the untruths. *See Temby*, 322 N.W.2d at 527.

Defendants maintain that the Toshners' claims fail because they have failed to provide sufficient evidence to support this theory too. (*See* ECF No. 103 at 22–26; ECF No. 106 at 6.) In particular, Goodman argues that the Toshners have not shown any of his statements or actions were knowingly untrue. (ECF No. 103 at 23–24.) The Toshners rely on "the same evidence" they relied upon for their negligent and intentional misrepresentation claims to support their claim under Section 551.501 (without a citation to the record). (ECF No. 111 at 20–21.)

As before, the Toshners' claims under Sections 551.501(2) and (3) fail for a lack of evidence. With respect to their claim for fraudulent misrepresentations under Section 551.501(2), the Toshners have not provided any evidence that he knew that Goodman or Robbins's statements were false. *See* § 551.509(2). At most, David Toshner's declaration provides general statements he says Goodman made during their short phone calls and Robbins repeated—notably, that the notes were "super safe," paid a higher interest rate than bonds or cash, had a "first position lien on the properties," and would provide a monthly interest payment check. (*See* ECF No. 114 ¶¶4–6.)

---

[7] In the operative complaint, the Toshners also passingly claim that "Defendants are also liable to Plaintiffs for violation of Wis. Stat. § 551.509(4) and (5) for knowingly acting as unlicensed broker-dealers and/or investment advisors in Wisconsin." (ECF No. 54 ¶118.) The Toshners make no reference to these subsections in their brief in opposition to summary judgment. (*See* ECF No. 111.) Goodman argues that these claims are thus "presumably abandoned." (ECF No. 117 at 14.) The Court agrees. *See Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment.") (citing *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999)). The Toshners' claims under Section 551.509(4) and (5) are therefore dismissed.

There is no evidence to suggest the requisite levels of knowledge on the part of either the Toshners or Defendants. Thus, the Toshners' Section 551.501(2) claim fails for the same lack of evidence as their common law fraud and negligent misrepresentation claims.

The Toshners' Section 551.501(3) claim suffers the same fate. The Toshners have no evidence that these defendants—Goodman, Robbins, or Knowles—"engaged in an act, practice, or course of business that operates or would operate as a fraud or deceit on another person." *See* § 551.503(3). Shapiro's scheme with Woodbridge certainly caused the Toshners financial hardship. But there is no evidence beyond counsel's sweeping—yet abbreviated— rhetoric tying these defendants to the fraudulent nature of that scheme. As before, the Toshners have failed to show anything more than "some metaphysical doubt as to the material facts." *See Matsushita*, 475 U.S. at 586. That is not enough to allow a fraud claim to survive summary judgment.

> C. **Wis. Stat. Section 551.502 Does Not Create a Private Right of Action, and the Toshners' Attempt to Substitute Section 551.509(6) in its Place Fails.**

Under Section 551.502(1), a person may not provide investment advice for compensation that defrauds others. This statute has no accompanying statute imposing civil liability. *See* Wis. Stat. § 551.509. In its place, the Toshners point to Section 551.509(6), which imposes civil liability on those who provide fraudulent or deceitful investment advice for consideration. Section 551.509(6)'s language is similar to Section 551.502's language. Section 551.509(6) states that:

> A person that receives directly or indirectly any consideration for providing investment advice to another person and that employs a device, scheme, or artifice to defraud the other person or engages in an act, practice, or course of business that operates or would operate as a fraud or deceit on the other person is liable to the other person.

Wis. Stat. § 551.509(6). Similarly, Section 551.502 states:

> It is unlawful for a person that advises others for compensation, either directly or indirectly or through publications or writings, as to the value of securities or the advisability of investing in, purchasing, or selling securities or that, for compensation and as part of a regular business, issues or promulgates analyses or reports relating to securities, to do any of the following . . . .

Wis. Stat. § 551.502(1).

As an initial matter, the Toshners do not cite Section 551.509(6) in their operative complaint, at most they reference Section 551.509 generally. Their pleading relies instead on Section 551.502(1), which has no accompanying private right of action. (*See* ECF No. 54 ¶113.) The Toshners do not dispute this reality in their opposition brief. (*See* ECF No. 111.) A party

generally cannot amend its pleading in a response brief at summary judgment. *See Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 488 (7th Cir. 2023). While a district court retains discretion to allow a party to introduce new claims in its summary judgment briefing by deeming the presentation as a constructive motion to amend, it is "rarely [] appropriate to do so." *Id.* at 490. The operative complaint was the Toshners' third bite at the apple. Given the heightened pleading standards for fraud claims, it is unclear whether the general invocation of Section 551.509 is enough to sufficiently plead this claim. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011). In any case, allowing the Toshners a last-minute reframing of their claims in their summary judgment briefing would be unfair both to Defendants and contrary to the interests of justice. *See Schmees*, 77 F.4th at 489 ("[J]ustice will rarely require leave to amend in the context of new claims presented for the first time in opposition to a motion for summary judgment."). While this is likely sufficient to reject their claim, the Court will proceed further because the claim fails for another reason.

Knowles and Robbins argue that the Toshners did not pay *any* compensation to them for investment advice, let alone "special compensation," so even Section 551.509(6) is inapplicable. (ECF No. 106 at 6–7.) Goodman, for his part, argues this provision is inapplicable to him, because he is not alleged to have engaged in a scheme to defraud the Toshners. (ECF No. 103 at 25.) The Toshners counter, with neither factual or legal support, that Woodbridge provided compensation to Goodman and Robbins for their services, which satisfies the statute's "directly or indirectly" language because the payment "obviously" came from, in part, money the Toshners paid to Woodbridge. (ECF No. 111 at 22–23.)

The Toshners' attempt to evade the summary judgment standard with generic assertions yet again fails. While the statute provides that the compensation may be provided "directly or indirectly," Section 551.509(6)(b) also provides that the subsection does not apply if the investment advice provided is incidental to the business and "no special compensation is received for the investment advice." Once again, the Toshners have not proffered any evidence that any compensation received by Goodman or Robbins—from the Toshners or otherwise—was specifically for their investment advice and not just for their roles as CEO (Robbins) or in marketing (Goodman). Without evidence that Defendants received some kind of special compensation for investment advice specifically, the Toshners cannot stave off summary judgment

on this ground.  Therefore, summary judgment must be granted in favor of Defendants on every claim.

## CONCLUSION

The Toshners lost several hundred thousand dollars due to their investment in Robert Shapiro's Ponzi scheme.  The Toshners are undoubtedly victims of Shapiro's wrongdoing.  But they have a burden in opposing summary judgment to proffer evidence that shows a genuine dispute of material fact for trial against the defendants in *this* case: Goodman, Robbins, Knowles, and Ellis.  Their documents opposing Goodman's, Robbins's, and Knowles's motions for summary judgment largely rely on inadmissible evidence and imprecise rhetoric to make their case.  Counsel repeated this imprecise rhetoric at oral argument.  At summary judgment, the rubber meets the road, and sweeping argument is not enough.  Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motions for summary judgment, ECF Nos. 101 & 105, are **GRANTED**.  Goodman, Robbins, and Knowles are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiffs have **14 days** from the date of this Order to explain why summary judgment should not also be granted in Ellis's favor.

**IT IS FURTHER ORDERED** that Counsel for Goodman's motion to withdraw as attorney for Defendant Jordan Goodman, ECF No. 123, is **DENIED as moot**.

Dated at Milwaukee, Wisconsin on February 7, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge